# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **Shirley Harris,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Cv. No.    3:12-cv-0552 |
| vs. ) | **District Judge Campbell/Magistrate** |
| ) | **Judge Brown.** |
| ) | |
| **LNV Corporation** *and their agents:* ) | |
| **MGC Mortgage, Inc.** *as master servicer,* ) | |
| **Dovenmuehle Mortgage** *as default servicer* ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |
| ) | |
| **LNV Corporation,** ) | |
| ) | |
| **Counter Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| **Shirley Harris,** ) | |
| ) | |
| **Counter Defendant.** ) | |

**To: The Honorable District Judge Todd J. Campbell**

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss and Motion for Summary Judgment. (DE 58).[1] "Defendants" comprise of LNV Corporation ("LNV"), MGC Mortgage, Inc. ("MGC"), and Dovenmuehle Mortgage ("DMI"). Upon receipt and consideration of Plaintiff's Response to Defendants' Statement of Material Facts (DE 71), the Magistrate Judge **RECOMMENDS** that Defendants' Motion to Dismiss and Motion for Summary Judgment (DE 58) be **GRANTED IN PART** and **DENIED IN PART**.

---
[1] "DE" refers to Docket Entry.

1

## I. FACTUAL HISTORY

In 2006, Plaintiff purchased her childhood home from her late mother's estate. (DE 1, p. 4 ¶ 18). At that time, Plaintiff took a mortgage in the amount of $76,500.00 to finance the purchase. (DE 1, p. 4 ¶¶ 17-18) (DE 71, p. 2 ¶ 1). The loan was secured by a Note and Deed of Trust given in favor of the lender, Aames Funding Corporation. (DE 71, p. 2 ¶¶ 1-2). Mail and other communications related to this financial agreement were to be sent to Plaintiff's "2508 Trevecca" address. (DE 71, pp. 2-3, ¶¶ 3-6). Aames Funding Corporation later indorsed the Note to CitiGroup, and Bank of America ("BoA") began servicing the mortgage. (DE 71, p. 3 ¶ 7).

On July 23, 2009, MGC purportedly mailed a letter to Plaintiff's Trevecca address, notifying Plaintiff that effective August 1, 2009, her mortgage would be serviced by MGC instead of BoA. (DE 71, p. 3 ¶ 8) (DE 28, p. 12 ¶ 12). Plaintiff stated she did not recall receiving this letter.[2] (DE 59-1, p. 1) (DE 71, p. 3 ¶ 9). MGC again claims to have sent letters to Plaintiff on September 1 and 16, 2009, noting that her loan was past due in the amount of $3,407.03. (DE 71, pp. 3-4 ¶ 10). Plaintiff did not recall receiving these letters. (DE 59-1, pp. 1-2).

Several months later, on January 1 and February 1, 2010, MGC allegedly sent letters to Plaintiff's Trevecca address, notifying Plaintiff that she remained delinquent in the amounts of $2,780.69 and $3,557.63 respectively. (DE 71, pp. 4-5, ¶¶ 11-13). As with the previous correspondence, Plaintiff denied receiving these letters. (DE 59-1, pp. 2-3) (DE 71, pp. 4-5 ¶¶ 11-12, 14).

In March 2010, MGC notified Plaintiff that DMI would assume mortgage services effective April 1, 2010. (DE 71, pp. 5-6 ¶ 16) (DE 59-1, pp. 14, 16).[3] The letter directed Plaintiff

---

[2] Both sides are taking liberty with the actual statements made in the deposition.
[3] The Magistrate Judge recognizes that DMI was responsible for servicing Plaintiff's loan after April 1, 2010, but each notice statement included with Defendants' motion appears on MGC letterhead. Further, it is unclear from the record whether communications that occurred between October 2010 and May 2011 were conducted between

2

to continue making payments to "MGC Mortgage Inc." (DE 71, pp. 7 ¶ 17) (DE 59-1, p. 14). DMI allegedly sent a similar letter to Plaintiff on the dame day, receipt of which Plaintiff disputes. (DE 71, p. 7 ¶ 18). On April 27, 2010, LNV and MGC purportedly instituted a "debt forgiveness" program and notified Plaintiff that the delinquent amount in her loan account would be forgiven effective May 1, 2010. (DE 59, p. 4) (DE 59-1, p. 20) (DE 71, pp. 7-9 ¶¶ 21-22). Plaintiff challenges the existence of this program and denies receipt of a notification letter. (DE 71, pp. 7-9 ¶¶ 21-23). Defendants next allege that Plaintiff failed to make her May 2010 payment, which Plaintiff disputes. (DE 71, pp. 9-10 ¶ 26). The parties agree that Plaintiff made a payment in June 2010 and two payments in August 2010. (DE 71, p. 10 ¶¶ 27, 31). At issue, however, is whether Plaintiff was a month delinquent after making these payments. (DE 71, pp. 10-11 ¶¶ 28-32).

In October 2010, Plaintiff began making her monthly mortgage payments through Wells Fargo's "Bill Pay" system, which submits electronic checks to payees. (DE 1, p. 5 ¶ 23). On October 4, 2010, DMI received and cashed a payment made out to "MGM" instead of "MGC." (DE 71, p. 12 ¶ 34). Again, Plaintiff submitted a check payable to "MGM" instead of "MGC" on November 9, 2010, which DMI nevertheless cashed. (DE 71, p. 12 ¶ 36). Plaintiff submitted another check made out to "MGM" on November 30, 2010. (DE 71, p. 13 ¶ 38). Instead of cashing the check, MGC returned the check to Plaintiff on December 9, 2010. (DE 71, p. 13 ¶ 38). Plaintiff submitted another payment on December 31, 2010. (DE 71, p. 13 ¶ 40).

MGC purportedly sent Plaintiff a "Notice of Right to Foreclose" on January 18, 2011, which Plaintiff claims she did not receive. (DE 71, p. 13 ¶ 41). Plaintiff later submitted a payment on February 9, 2011. (DE 71, p. 13 ¶ 42). Defendants claim they sent Plaintiff a "Notice

---

Plaintiff and MGC or DMI. As such, the Magistrate Judge's references to MGC are intended to refer collectively to MGC and/or DMI without distinction.

of Default" on March 3, 2011, which Plaintiff claims she did not receive. (DE 71, p. 14 ¶ 44). Defendants received a payment from Plaintiff on March 9, 2011, misaddressed to "MGM" which was placed in suspension and later applied to her account in May 2011. (DE 71, p. 14 ¶ 45). Plaintiff sent three payments addressed to the wrong payee, "MGM," on March 28 and April 18, 2011. (DE 71, p. 14 ¶ 47). These checks were returned to Plaintiff. (DE 71, p. 14 ¶ 47).

MGC sent Plaintiff a second default notice on May 5, 2011, and sent a letter on June 3, 2011 identifying the checks that had been returned to Plaintiff. (DE 71, p. 15 ¶ 49). Neither notice purported to accelerate the loan balance or evinced any intent to immediately foreclose on the property. (DE 59-1, pp. 25-28). A MGC representative contacted Plaintiff in May 2011 to inform her that her mortgage account was still $3,700.00 in arrears. (DE 1, p. 5 ¶ 26). Plaintiff disputed the delinquency, forwarded her bank statements to MGC as proof of payment, and authorized her bank to speak directly with MGC to resolve the issue. (DE 1, p. 5 ¶¶ 27-30). Bill Pay representatives informed Plaintiff that some payments made to MGC had been held for ninety days before being presented for payment or returned. (DE 1, p. 5 ¶ 31). On June 3, 2011, MGC forwarded a letter to Plaintiff confirming their discussion regarding the rejected payments and requested that Plaintiff have her Bill Pay service issue future payments to the correct payee. (DE 1-6, p. 2). Further, the accounting of payments asserted that "[t]he account is due for the December 2010 payment [and] was due for the February 2010 payment" when DMI "acquired the loan in April of 2010." (DE 59-1, p. 29).

Though Plaintiff submitted payments from April 2011 through November 2011, MGC rejected each payment because they were made out to the wrong payee, were partial payments,[4] lacked a signature,[5] or were insufficient to reinstate the loan.[6] (DE 63-2, pp. 1-2) (DE 71, p. 15

---

[4] Money orders tendered on June 7 and 29 for $2,250.00 and $750.00.
[5] Money order for $750.00 tendered on August 16.

¶¶ 48, 50). Plaintiff deposited all funds rejected by MGC into an escrow account to combat foreclosure. (DE 1, p. 6 ¶¶ 34-35). Plaintiff's loan account was referred to MGC's foreclosure department on July 9, 2011. (DE 63-3, p. 2). Although Defendants apparently advertised the property for foreclosure on December 8, 2011 prior to acceleration of the loan, the sale was cancelled after consultation with Plaintiff's counsel. (DE 1, p. 6 ¶¶ 39-40).

CitiGroup assigned the Deed of Trust of Plaintiff's property to LNV in January 2012 and indorsed the Note to LNV. (DE 71, p. 15 ¶ 51). On January 18, 2012, Defendants sent Plaintiff a "Notice of the Right to Foreclose." (DE 59-1, pp. 21-24). Defendants again published notice that Plaintiff's property would be sold at auction on June 1, 2012. (DE 1, p. 6 ¶ 43).

## II. PROCEDURAL HISTORY

Plaintiff filed the instant matter in this Court on May 31, 2012, alleging nine separate claims against LNV and its agents, MGC and DMI. (DE 1). According to the complaint,

(1) Defendants' actions violate the Fair Debt Collection Practices Act ("FDCPA") provisions 15 U.S.C. §§ 1692e(2), 1692e(5), 1692f, and 1692f(6);

(2) Defendants' negligence is the proximate cause of default, and, as such, Defendants are liable to Plaintiff for any and all damages that arise;

(3) Defendants would be unjustly enriched should they retain the fees and charges assessed against Plaintiff due to their mishandling of her loan payments;

(4) Defendants' conduct constitutes unfair and deceptive business practices in violation of the Tennessee Consumer Protection Act ("TCPA") Tenn. Code Ann. § 47-18-104(b)(27);

(5) Defendants' attempts at foreclosure constitute wrongful foreclosure under Tennessee law;

(6) Defendants' conduct was wanton under Tennessee law;

(7) Attempts at foreclosure under the circumstances here amount to slander of title under Tennessee law;

---

[6] Single payments of $750.00 submitted in July, August, and October as were three separate payments of $750.00 submitted in September. The August 16 money order was rejected in October under this premise.

5

(8) Defendants breached the terms of the mortgage and Deed of Trust which caused the default, making Defendants liable for the resulting damages; and

(9) Defendants' conduct is so egregious that they are liable for intentional infliction of emotional distress.

(DE 1, pp. 8-12 ¶¶ 57-105).

On May 31, 2012, Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction to prevent the June 1, 2012 foreclosure sale. (DE 2). Judge Trauger granted Plaintiff's motion for a TRO and preliminary injunction on that same day. (DE 3). On June 1, 2012, Judge Campbell scheduled a hearing regarding Plaintiff's motion for a preliminary injunction; the hearing was later cancelled. (DE 4) (DE 8). The case was then referred to the Magistrate Judge for case management. (DE 5). DMI answered on August 22, 2012. (DE 15). On November 28, 2012, Plaintiff again moved for a TRO and preliminary injunction on the foreclosure sale set for November 29, 2012. (DE 26). Judge Campbell entered a TRO on the same day. (DE 27). LNV filed its answer and a counterclaim against Plaintiff on December 6, 2012. (DE 28). Judge Campbell entered a preliminary injunction order on December 12, 2012. (DE 37). As a result of Plaintiff violating the terms and conditions in the preliminary injunction order, Judge Campbell dissolved and vacated the order on October 3, 2013. (DE 57).

Defendants next moved on October 7, 2013, to dismiss counts one, two, four, seven, eight, and nine for failure to state a claim upon which relief can be granted, and moved for summary judgment on counts three, five, and six. (DE 58). Plaintiff responded on November 7, 2013 (DE 63) to which Defendants replied on November 22, 2013. (DE 64). Judge Campbell referred the pending Motion to Dismiss and Motion for Summary Judgment (DE 58) to the Magistrate Judge on November 25, 2013, for a Report and Recommendation ("R&R"). (DE 65).

The Magistrate Judge filed a R&R on January 8, 2014, recommending that Defendants' motions be granted in part and denied in part. (DE 66). Defendants filed their objections to the R&R on January 22, 2014. (DE 67). Plaintiff replied to Defendants' objections on February 12, 2014. (DE 68). Judge Campbell referred the matter back to the Magistrate Judge pending receipt of Plaintiff's responses to Defendants' Statement of Material Facts (DE 60). (DE 69). Plaintiff submitted her responses to Defendants' Statement of Material Facts on February 20, 2014. (DE 71). The matter is properly before the Court.

## III. CONCLUSIONS OF LAW

### A. Standard of Review: Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Upon receipt of a Rule 12(b)(6) motion to dismiss, the Court's disposition turns on the sufficiency of facts pleaded. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). "[A] plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law." *Id.* The factual allegations pleaded must support a "plausible inference of wrongdoing." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)); *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013). Considerations include "common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship*, 727 F.3d at 504 (citing *Iqbal*, 556 U.S. at 682). Further, the Court shall "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). "The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Iqbal*, 556 U.S. at 696.

7

## B. Standard of Review: Motion for Summary Judgment under Fed. R. Civ. P. 56(a)

The Court may grant a request for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A "genuine issue of material fact" is one which, if proven, could adduce a reasonable jury to return a verdict for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden for establishing the absence of a factual dispute rests with the moving party, and "the evidence should be viewed in the light most favorable to the non-moving party." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir.1999); *see also Anderson*, 477 U.S. at 249–50.

"The moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party is not entitled to trial solely on the basis of the pleadings themselves, but must provide more than conclusory allegations, speculation, and unsubstantiated assertions. *See Lujuan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Rather, at the summary judgment stage, the party opposing summary judgment "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## IV.  ANALYSIS

### A. Dismissal under Fed. R. Civ. P. 12(b)(6)

Defendants contend that Plaintiff failed to state a claim: under the FDCPA (count one), of negligence (count two), under the TCPA (count four), for slander of title (count seven), for

breach of contract (count eight), and for intentional infliction of emotional distress (count nine). (DE 58). Plaintiff did not respond to Defendants' motion to dismiss her claims of negligence (count two), TCPA violations (count four), and intentional infliction of emotional distress (count nine). (DE 63). Per Local Rule 7.01(B), review of Defendants' motion to dismiss proceeds as though Plaintiff did not oppose the motion.[7] Nevertheless, dismissal is only appropriate if Plaintiff's factual allegations, taken as true, do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. For this reason, the Magistrate Judge finds that Plaintiff's allegations of negligence (count two) and intentional infliction of emotional distress (count nine) should be dismissed, but Plaintiff's claim under the TCPA (count four) should remain.

1. **Count 1: Fair Debt Collection Practices Act ("FDCPA")**

Plaintiff alleges Defendants violated four provisions of the FDCPA, 15 U.S.C. §§ 1692e(2), 1692e(5), 1692f, and 1692f(6). Underlying this charge is the implied assumption that the FDCPA applies to these Defendants as "debt collectors." For the following reasons, the Magistrate Judge finds that Defendants are debt collectors for the purposes of this Act. Furthermore, Plaintiff puts forth sufficient factual allegations, which if considered true, state a plausible claim for relief. Dismissal of Plaintiff's claims under the FDCPA is therefore unwarranted.

---

[7] Local Rule 7.01(b) provides: "Failure to file a timely response [to motions] shall indicate that there is no opposition to the motion."

### a. Defendants are "debt collectors" subject to the FDCPA

Congress enacted the FDCPA in part "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). "Debt" encompasses actual and *alleged* financial obligations. *Id.* at § 1692a(5).[8] A "creditor" is defined as one

> who offers or extends credit creating a debt or to whom a debt is owed, but such term *does not* include any person to the extent that he receives an assignment or transfer of a debt *in default* solely for the purpose of facilitating collection of such debt for another.

*Id.* at § 1692a(4) (emphasis added). A "debt collector," on the other hand,

> means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include . . . (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was *not in default at the time it was obtained* by such person.

*Id.* at § 1692a(6) (emphasis added). An entity is either a creditor or a debt collector if (1) it "did not originate the debt in question" and (2) "acquire[s the debt] and attempts to collect on it." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012); *cf. MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007) (holding that Discover, the originator of the debt, was not a "debt collector"). The terms "creditor" and "debt collector" are mutually exclusive. *Bridge*, 681 F.3d at 359. Determining whether the individual is, or "stand[s] in the shoes of," a creditor as opposed to a debt collector "depend[s] on the *default status* of the debt at the time it was acquired." *Id.*(emphasis added). An entity is a debt collector when it purchases defaulted debts. *Id.*; 15 U.S.C. § 1692a(6)(F)(iii); *cf.Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013) ("Chase obtained the . . . loan for servicing *before* default. Therefore, Chase is not a 'debt collector.'").

---

[8] The Act defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1692a(5).

Defendants (MGC, DMI, and LNV) are "debt collectors" for purposes of the FDCPA. Defendants' own brief states that "Bank of America was the mortgage servicer of the loan until it assigned those duties to Defendant **MGC** on July 23, 2009. At that time, Plaintiff's account was **delinquent**."[9] (DE 59, p. 11) (emphasis added). Plaintiff's account was next transferred to **DMI** effective April 1, 2010. (DE 59-1, p. 16). MGC claims to have sent Plaintiff a letter on April 27, 2010, stating that her "**past due** principal, interest, and fees" were forgiven. (DE 71, p. 9 ¶ 22) (DE 59-1, p. 20) (emphasis added). It is difficult to reconcile this letter with Defendants' statement that "when **DMI** began servicing Plaintiff's loan, the account was **not in default**." (DE 59, p. 11) (emphasis added). MGC was clearly under the impression that Plaintiff's debt was delinquent, or in its words "past due," in early April 2010 when DMI received the account. (DE 63-1, pp. 7-8). Defendant further provides that "the note was assigned to Defendant **LNV** on January 11, 2012. Plaintiff was in **default** at the time LNV took ownership and possession of the Note." (DE 59, p. 11) (emphasis added). Even though LNV thereafter owned the debt, it is nevertheless a debt collector since Defendants concede they believed the debt to be in default at the time of transfer, and LNV "did not originate the debt in question but acquired it and attempt[ed] to collect on it." *Bridge*, 681 F.3d at 359. Defendants are therefore debt collectors subject to the FDCPA.

### b. Plaintiff's FDCPA claims survive a motion to dismiss

Plaintiff first alleges Defendants violated 15 U.S.C. § 1692f by using "unfair or unconscionable means to collect or attempt to collect" debt owed by Plaintiff. (DE 1, p. 8 ¶ 59). She next contends that Defendants violated 15 U.S.C. § 1692e(2) which prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt." (DE 1, p. 8 ¶ 60). Plaintiff further alleges that Defendants' threats of foreclosure violated 15 U.S.C. § 1692e(5) by

---
[9] Alleged debt constitutes debt for the purposes of the Act. 15 U.S.C. § 1692a(5).

making a "threat to take any action that cannot legally be taken" and violated 15 U.S.C. § 1692f(6) which prohibits debt collectors from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if-- (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest." (DE 1, p. 8 ¶ 61).

In support of her claims, Plaintiff asserts that Defendants wrongfully caused Plaintiff's account to be delinquent when they accepted misaddressed checks on several occasions but rejected other misaddressed payments. She further claims Defendants, without giving prior notice, intentionally withheld payments they intended to reject for up to ninety days before returning them. According to Plaintiff, this unfair conduct caused her loan account to be in default and prevented her from timely curing the default. Plaintiff further alleges that Defendants advertised her home for sale under foreclosure, attempted to begin foreclosure proceedings, and assessed late fees and attorney's fees against Plaintiff as a result of these delinquencies.

Defendants assert their actions were proper in light of Plaintiff's delinquent account status. Defendants further submit that their treatment of Plaintiff's misaddressed payments is immaterial because Plaintiff's delinquency occurred in the preceding months. According to Defendants' "it is uncontroverted that Plaintiff failed to make three (3) payments in 2010 . . . for the months of May, July, and September." (DE 67, p. 5). Plaintiff, however, disputes this contention, along with other allegations that Plaintiff's account was in arrears. (DE 71, pp. 9-12, 14, ¶¶ 26-37, 43, 46). Plaintiff furthermore alleges she did not recall receiving written notices of default in January 2011 and March 2011. (DE 71, pp. 13-14 ¶¶ 41, 44).

Accepting Plaintiff's factual allegations as true, a fact finder may plausibly find that Defendants' conduct violated the FDCPA. Whether Defendants' actions were justified; i.e.

whether Plaintiff was in default and whether Defendants complied with the Deed of Trust's provisions, are governed by state contract law and require detailed factual findings by a jury. Plaintiff states a plausible claim for relief under the FDCPA.

### 2. Count 4: Tennessee Consumer Protection Act ("TCPA")

Plaintiff next alleges Defendants' "deceptive and misleading" conduct violated the TCPA, specifically Tenn. Code. Ann. § 47-18-104(b)(27), when they (1) "returned Plaintiff's certified payments rather than apply them to her account," (2) "assessed late fees and penalties for alleged failure to receive payments they in fact returned," and (3) "held payments from Plaintiff, often more than 30 days before returning them." (DE 1, p. 10 ¶¶ 78-79). Defendants argue that "Plaintiff's TCPA claim necessarily fails because the actions she complains of . . . do not affect 'trade or commerce.'" (DE 59, p. 14).

Although not addressed by the parties, the Magistrate Judge recognizes that Plaintiff's claims under section 47-18-104(b)(27) of the TCPA are not precluded by the 2011 amendments to the Act. *See* 2011 Tennessee Laws Pub. Ch. 510 §§ 15, 24 (H.B. 2008). Injuries which accrued before October 1, 2011, may be brought as private actions, but enforcement of this section of the Act for later offenses is left solely to "the office of the attorney general and reporter and the director of the division." *Id.*; Tenn. Code Ann. § 47-18-104(b)(27). Since Plaintiff alleges Defendants' actions before 2011 gave rise to her section 47-18-104(b)(27) claim, she may proceed under a private right of action.

At the time of accrual, the Act provided, "(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful . . . (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27). The Act "shall be liberally construed to promote" its

13

policies, one of which is "to protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-102(2); *Fayne v. Vincent*, 301 S.W.3d 162, 172 (Tenn. 2009). "A deceptive act or practice is, in essence, 'a material representation, practice or omission likely to mislead . . . reasonable consumer[s]' to their detriment." *Fayne*, 301 S.W.3d at 177 (citations omitted). Both intentional deceptions and negligent misrepresentations may violate the Act's prohibition on deceptive behavior. *Id.*

For purposes of the TCPA, "[t]rade, commerce, or consumer transaction means the advertising, offering for sale, lease or rental, or distribution of any . . . [real] property." Tenn. Code Ann. § 47-18-103(19) (internal quotations removed). Although the definition does not altogether "exempt banking activities from the [TCPA]," it does not include disputes regarding "repossession of the collateral securing [a] loan." *Pursell v. First Am. Nat. Bank*, 937 S.W.2d 838, 841–42 (Tenn. 1996); *see also Ganzevoort v. Russell*, 949 S.W.2d 293, 297 (Tenn. 1997). Initiation of foreclosure proceedings shelters lenders and their agents from liability under the TCPA. *Pugh v. Bank of Am.*, 13-2020, 2013 WL 3349649, at *7–8 (W.D. Tenn. July 2, 2013); *Paczko v. Suntrust Mortgages, Inc.*, M2011-02528-COA-R3CV, 2012 WL 4450896, at*1 (Tenn. Ct. App. Sept. 25, 2012) ("TCPA claims do not apply to allegedly deceptive conduct in foreclosure proceedings."). Violations of the Act preceding foreclosure are still actionable, and raising these claims serves the Act's stated purpose, for deceptive acts and practices outside of foreclosure proceedings that bring about default or prevent cure of default may harm consumers and commerce in general. *See* Tenn. Code Ann. § 47-18-102(2); *Peoples v. Bank of Am.*, 11-2863-STA, 2012 WL 601777, at *8–9 (W.D. Tenn. Feb. 22, 2012) (considering the merit of alleged pre-foreclosure TCPA violations). A case similar to the present lawsuit was presented to

14

a jury in *Filson v. Wells Fargo Home Mortgage, Inc.*, M200701842COAR3CV, 2008 WL 3914899, at*4 (Tenn. Ct. App. Aug. 25, 2008).

As Defendants conceded they have not foreclosed on Plaintiff's property (DE 59, p. 20), they may not evade Plaintiff's claims under the TCPA. Further, Plaintiff's claims under the TCPA concern the "deceptive and misleading" treatment of Plaintiff's payments, not the impending threat of foreclosure proceedings. Whether Defendants' treatment of Plaintiff's payments and assessment of late fees and penalties was "deceptive" is a question of fact properly left to the jury. *See Fayne*, 301 S.W.3d at 170.

### 3. Count 7: Slander of Title

To state a claim for slander of title, Plaintiff must prove: "(1) that [she] has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999) (citation omitted). A statement is malicious if "made with reckless disregard of the property owner's rights or with reckless disregard as to whether the statements are false." *Id.* Defendants contend that Plaintiff failed to "allege that any false statements were made about the title to the property" and that Plaintiff failed to allege malice. (DE 59, p. 16). Plaintiff argues that Defendants' three published notices of foreclosure are false statements and that malice may be inferred from Defendants' knowing publication of Plaintiff's disputed default status. (DE 63, p. 7).

Plaintiff sufficiently stated a cause of action for slander of title. She has an interest in the property which is the subject of this suit. Further, Plaintiff contends that the notices of foreclosure due to account delinquency are fraudulent statements since she challenges the

underlying "delinquent" status. She further presents an argument that the actions were malicious, characterizing Defendants' actions as "opportunistically hijack[ing] a performing mortgage loan for the purpose of generating additional unearned income." (DE 1, p. 7 ¶ 51). It is certainly plausible that a jury could find notices of default and account delinquency, especially if untrue, malicious. Last, Plaintiff asserts damages: "Defendant's wrongful foreclosure action has caused a cloud to be placed on the title of Plaintiff's home." (DE 1, p. 11 ¶ 95).

### 4. Count 8: Breach of Contract

To state a claim for breach of contract in Tennessee, the claimant "must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC–Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Defendants contend that dismissal of this claim is proper because Plaintiff has not engaged in separate contracts with MGC and DMI and because Plaintiff has not alleged harm suffered from this alleged breach. (DE 59, pp. 15-16). Plaintiff claims "Defendants breached the[ir] contract by returning payments to the Plaintiff rather than applying them to her mortgage account." (DE 63, p. 5).

Without a "valid and enforceable contract," it is unclear why LNV would counterclaim that "Harris has breached the terms of the Note by failing to pay the amounts due in accordance with the repayment schedule." (DE 28, p. 13 ¶ 21). It is not disputed that Plaintiff and CitiGroup, and later LNV, were engaged in a contractual agreement through Plaintiff's loan. (DE 59, p. 15) (DE 71, p. 15 ¶ 51). Defendants MGC and DMI are further party to this contract through principles of agency law. Indeed, Defendants stated in their motion that "they were acting as agents on behalf of the [legitimate] creditor, CitiGroup." (DE 59, p. 11).

In Tennessee, "a principal may be held vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority." *Abshure v. Methodist Healthcare-Memphis Hospitals*, 325 S.W.3d 98, 105 (Tenn. 2010). Agents who committed the harm may be liable to these third parties. Restatement (Third) Of Agency § 7.01 (2006). For liability to attach, however, the agent must "breach[] a duty that the agent owes to the third party." Restatement (Third) Of Agency § 7.02 (2006). Duties owed by agents to third parties may arise "from a promise made by the agent to the principal for which the third party is an intended third-party beneficiary" such as contracts to service loan agreements where the creditor is contracting out its duty to accept and service an individual's debt repayment. Restatement (Third) Of Agency § 7.02 comment b (2006); *see Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 70 (Tenn. 2001). Third parties are intended contractual beneficiaries if "(1) the parties to the contract have not otherwise agreed, (2) recognition of the third-party's right to performance is appropriate to effectuate the parties' intent, and (3) terms or circumstances indicate that performance of the promise is intended or will satisfy an obligation owed by the promisee to the third party." *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 618 (Tenn. 2004).

It appears that MGC and DMI were under contract with CitiGroup, and later LNV, to service Plaintiff's debt. (DE 62-1, pp. 2, 11). Defendants' performance conferred a benefit on Plaintiff, as proper application of Plaintiff's payments to her account maintained her interest in the subject property.[10] Plaintiff alleges Defendants breached their duties to administer her

---

[10] Institution of foreclosure proceedings is an absolute defense to slander of title claims. *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 Tenn. App. LEXIS 193, at *20–21 (Tenn. Ct. App. March 31, 2008). However, Defendants do not assert the defense, and it is uncertain whether legitimate foreclosure proceedings had been initiated. Notice of default was given in May 2011, but the property was not advertised for foreclosure until December 2011. Nothing indicates notice of acceleration and initiation of foreclosure until January 2012 and June 1, 2012. Defendants' publications were simply "threats" of foreclosure. (DE 59, p. 20).

mortgage agreement, resulting in a wrongful foreclosure action. (DE 1, p. 11 ¶¶ 98-100). Supporting her claim with factual allegations concerning the administration of her debt, Plaintiff therefore states a plausible claim for breach of contract.

## B. Dismissal under Fed. R. Civ. P. 56

Defendants seek summary judgment on Plaintiff's claims of unjust enrichment (count three), wrongful foreclosure (count five), and wantonness (count six). (DE 59, pp. 19-20). Plaintiff only defended her claim of wrongful foreclosure, thus conceding her claims of unjust enrichment (count three) and wantonness (count six).[11] (DE 63, p. 9). Plaintiff's claim of wrongful foreclosure (count five), however, is not yet ripe. As this renders the Court without jurisdiction to hear that claim, dismissal is therefore proper.

### 1. Count 5: Wrongful Foreclosure

Since Defendants have not yet conducted a foreclosure sale, (DE 59, p. 20), Plaintiff's claim of wrongful foreclosure is not yet ripe for review. *See* Tenn. Code. Ann. § 35-5-101 (providing the requirements for foreclosure proceedings). Ripeness deficiencies may be raised *sua sponte*. *In re Cassim*, 594 F.3d 432, 439 (6th Cir. 2010). Defendants argue that Plaintiff's wrongful foreclosure claim must be dismissed as "moot"[12] since there has only been the "threat" of foreclosure. (DE 59, p. 20). Plaintiff contends "that she should not be required to wait until the actual transfer of title to her property before asserting her rights." (DE 63, p. 9).

---

[11] Local Rule 56.01(g) provides that failing to respond to the moving party's statement of material facts indicates that the party does not dispute the facts. Plaintiff, however, responded to Defendants' Statement of Material Facts with DE 71. Local Rule 7.01(b) provides that a party's failure to respond to a motion indicates that the party does not dispute or oppose the motion.

[12] Defendants' argument that Plaintiff's wrongful foreclosure claim is "moot" is misplaced. The doctrine of mootness applies where a once live controversy no longer "exists in light of intervening circumstances." *B-Line, LLC v. Wingerter*, 594 F.3d 931, 936 (6th Cir. 2010) (citation omitted). On the other hand, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Cooley v. Granholm*, 291 F.3d 880, 883–84 (6th Cir. 2002) (citation omitted).

Though there are no specific elements of wrongful foreclosure, to state such a claim the claimant must show that a "legally held, conducted and consummated" foreclosure involved "irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court of equity to set aside the sale." *CitiMortage, Inc. v. Drake*, 410 S.W.3d 797, 802 (Tenn. Ct. App. 2013), *appeal denied* (Aug. 14, 2013) (citation removed) (emphasis removed)). Defendants have not yet held, conducted, or consummated a foreclosure proceeding, and until they do so, the Court lacks jurisdiction to consider Plaintiff's wrongful foreclosure claim. For this reason, the claim should be dismissed.

## V. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS**:

1. **Count 1:** Plaintiff states a claim for relief under the **FDCPA**, and Defendants are amenable to suit based upon their status as debt collectors. Accordingly, Defendants' Motion to Dismiss this claim should be **DENIED**.

2. **Count 2:** Plaintiff does not defend her claim of **negligence**. Accordingly, Defendants' Motion to Dismiss this claim should be **GRANTED**, and this claim should be **DISMISSED**.

3. **Count 3:** Plaintiff does not defend her claim of **unjust enrichment**. Accordingly, Defendants' Motion for Summary Judgment on this claim should be **GRANTED**, and this claim should be **DISMISSED**.

4. **Count 4:** Plaintiff states a claim for relief under the **TCPA**. Accordingly, Defendants' Motion to Dismiss this claim should be **DENIED**.

5. **Count 5:** Plaintiff's claim of **wrongful foreclosure** is not ripe, and since there has been no foreclosure, the Court lacks jurisdiction to consider the claim at this time. Accordingly, this claim should be **DISMISSED** for lack of subject matter jurisdiction.

6. **Count 6:** Plaintiff does not defend her claim of **wantonness**. Accordingly, Defendants' Motion for Summary Judgment should be **GRANTED**, and the claim should be **DISMISSED**.

7. **Count 7:** Plaintiff states a claim for **slander of title** under Tennessee law. Accordingly, Defendants' Motion to Dismiss this claim should be **DENIED**.

8. **Count 8:** Plaintiff states a claim of relief for **breach of contract**, and Defendants may be liable to Plaintiff as a third party beneficiary. Accordingly Defendants' Motion to Dismiss this claim should be **DENIED**.

9. **Count 9:** Plaintiff does not defend her claim of **intentional infliction of emotional distress**. Accordingly, Defendants' Motion to Dismiss this claim should be **GRANTED**.

Within fourteen (14) days from receipt of this R&R, the parties may serve and file written objections to the findings and recommendations made herein. Fed. R. Civ. P. 72(b)(2). Parties opposing the objections must respond within fourteen (14) days from service of these objections. *Id.* Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 12th day of June, 2014,

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge